03cv17000zbj-ord(MitchellRemand).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: WELDING FUME PRODUCTS LIABILITY LITIGATION | Case No. 1:03-CV-17000 (MDL Docket No. 1535) <br><br> JUDGE O'MALLEY <br><br> **MEMORANDUM AND ORDER** |

For the reasons stated below, the following cases are **REMANDED** to the Circuit Court of Wayne County, West Virginia, where they were originally filed:

• *Barcus v. Airco, Inc.*, case no. 08-WF-17032.

• *Mitchem v. Airco, Inc.*, case no. 08-WF-17033.

• *Osborne v. Airco, Inc.*, case no. 08-WF-17034.

• *Thomas v. Airco, Inc.*, case no. 08-WF-17035.

• *Wade v. Airco, Inc.*, case no. 08-WF-17036.

Accordingly, the motion to remand (dkt. no. 21) filed in the *Mitchem* case is **GRANTED**.

## I.    Procedural Background.

On November 17, 2006, a group of eight welders filed in West Virginia state court a product liability action against a number of defendants who manufactured and distributed welding rods.

Each of the eight welder-plaintiffs[1] claimed the defendants had failed to warn them of the hazards of exposure to welding fumes. The parties proceeded to engage in discovery. At some point, three of the plaintiffs dismissed their claims, leaving the following five plaintiffs to actively pursue their lawsuit: Donald Barcus, Albert Mitchem, Dannie Osborne, William Thomas, and Virgil Wade.

In early 2008, the parties agreed to proceed to trial on Mitchem's claims and to stay discovery as to the remaining four plaintiffs. Mitchem's trial was scheduled to begin on August 11, 2008. On May 23, 2008, however, defendants removed to the federal district court for the Southern District of West Virginia the entire case, including the claims of all five plaintiffs. Defendants stated the basis for removal was federal question jurisdiction, pursuant to the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1).[2] As to the timeliness of their notice of removal, the defendants explained: "Although the removing defendants were served with process on or about December 11, 2006, it was not until May 12, 2008 . . . that removing defendants first became aware of a basis for removal."[3] In particular, on May 12, 2008, defendants received a transcript of Mitchem's deposition, where he testified that, during his employment as a welder at Newport News Shipbuilding, he helped build ships for the United States Navy. Defendants assert that, given they first learned of a factual basis for Federal Officer Removal on May 12, 2008, their removal notice

---

[1] The eight plaintiffs were also joined in their lawsuit by their spouses, who asserted claims for loss of consortium. For simplicity, the Court refers only to the primary eight plaintiffs in this opinion.

[2] Notice of Removal at 5. This statute states: "A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." 28 U.S.C. §1442(a)(1).

[3] *Id.* at 8-9.

was filed timely pursuant to the "other paper rule," found at 28 U.S.C. §1446(b). This statute states, in pertinent part: "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

After the case was removed to federal court in West Virginia, the Judicial Panel on Multi-District Litigation transferred the case to this Court as related to *In re Welding Fumes Prods. Liab. Litig.*, MDL No. 1535. This MDL Court had earlier entered a standing "Severance Order" applicable to all cases transferred to it where "a number of unrelated individuals were joined as parties-plaintiff."[4] In particular, the Court had ordered that all "multi-plaintiff cases [it receives] shall be severed such that each plaintiff (together with their associated derivative claimants) becomes a plaintiff in a new lawsuit, to which a new case number will be assigned."[5] Accordingly, the case removed from West Virginia state court was severed into the five separate cases listed at the beginning of this Order.

The plaintiffs then filed a motion to remand, arguing that: (1) there exists no basis for federal jurisdiction; and (2) the defendants' notice of removal was not timely filed. Because it is dispositive, the Court examines only the latter argument.

---

[4] Order (dkt. no. 59) at 1.

[5] *Id.* at 2.

3

**II.    The "Other Paper" Rule.**

Earlier, this MDL Court issued a number of Orders addressing various motions for remand. One of these Orders involved removal of another multi-plaintiff West Virginia case, known as *Adames*, and application of the second sentence of §1446(b), known as the "other paper" rule. A comparison of the circumstances of the *Adames* case and the circumstances of this case is instructive.

In *Adames*, the amended complaint filed in state court "listed 3,762 individual plaintiffs, a pleading practice which West Virginia law apparently allowed."[6] As is the case here, the *Adames* plaintiffs "all claimed they suffered some form of neurological injury caused by inhaling welding fumes."[7] The defendants removed the case over 10 months after it was initially filed, "well after the 30-day deadline normally imposed by the first sentence of 28 U.S.C. §1446(b)."[8] The defendants explained that, "[1] on March 5, 2004, defendants received the deposition of *Adames* plaintiff Johnnie Moore, who testified he had worked at the Todd Shipyard in Galveston, Texas; [2] the defendants made inquiries and learned that welders at the Todd Shipyard do work on United States Navy ships; [3] before that point in time, the defendants had no factual basis to believe there existed grounds for assertion of the military contractor defense; and [4] therefore, the defendants' notice of removal was filed within 30 days of the date of receipt of a 'paper from which it [could] first be

---

[6] Order (dkt. no. 1001) at 1.

[7] *Id.*

[8] *Id.* at 3.  This sentence reads: "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."  28 U.S.C. §1446(b).

4

ascertained that the case is one which is or has become removable,' 28 U.S.C. §1446(b)."[9]

Notably, the defendants in *Adames* removed the *entire* case, including the claims asserted by *all* of the many hundreds of plaintiffs listed in the amended complaint, within 30 days of learning that *one* of those plaintiff's "alleged exposure to welding fumes . . . would necessarily have involved welding rods designed, manufactured and packaged pursuant to U.S. government military specifications."[10] The removal of the claims of *all* of the plaintiffs was necessary because federal procedure only allows the defendants to remove the *entire* state court case to federal court, or none of it – for example, the *Adames* defendants could not somehow remove to federal court only plaintiff Moore's claims and leave the rest of the *Adames* case in state court.[11]

This Court denied the *Adames* plaintiffs' motion to remand, concluding that: (1) "the defendants' military contractor defense [to plaintiff Moore's claims] was colorable, thereby providing a valid basis for federal jurisdiction" over the entire case; and (2) "the defendants did timely remove the *Adames* complaint, given all the circumstances" surrounding when and how the

---

[9] Order (dkt. no. 1001) at 4.

[10] *Id.* at 2 (quoting defendants' notice of removal of the *Adames* case)

[11] *Cf.* 28 U.S.C. §1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, *the entire case may be removed* and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.") (emphasis added); *see also In re Norplant Contraceptive Prods. Liab. Litig.*, 976 F.Supp. 559 (E.D. Tex. 1997) (defendants sought to remove to federal court from Texas state court only the claims made by the diverse plaintiffs in a multi-plaintiff case, while leaving in state court the claims made by the non-diverse plaintiffs; the federal district court granted remand even though the diverse plaintiffs had all joined the state court case as a group later, through intervention). As *Norplant* and other cases that cite *Norplant* suggests, removal to federal court of only some of the plaintiffs' claims from a multi-plaintiff state court case might be permitted if severance is first obtained in state court.

5

defendants learned they had a federal defense to plaintiff Moore's claims.[12] Accordingly, all of the hundreds of plaintiffs listed in the *Adames* complaint followed plaintiff Moore from West Virginia state court to federal court.[13]

The key to the Court's timeliness analysis in *Adames* involved when the defendants learned they had a federal defense to any of the *Adames* plaintiffs' claims. Initially, "the *Adames* complaints (both original and first amended) list[ed] the state of residency and places of employment for *none* of the 3,762 named plaintiffs," nor did the complaints allege any "concrete facts hinting that any one of the plaintiffs suffered exposure to welding fumes while working on a federal enclave or a United States Navy ship."[14] Thus, the 30-day deadline normally imposed by the first sentence of 28 U.S.C. §1446(b) did not apply.[15] Only after defendants "received the deposition of *Adames* plaintiff Johnnie Moore, who testified he had worked at the Todd Shipyard in Galveston, Texas," and after

---

[12] Order (dkt. no. 1001) at 3, 7.

[13] The Court further noted, however, that all of these plaintiffs would be severed from each other in the federal MDL court, each with his own case; and, as to many of these individual plaintiffs, there would likely be "no factual basis for the defendants to assert a colorable federal defense." *Id.* at 8. Thus, after additional plaintiff-specific discovery took place, each *Adames* plaintiff could move separately for remand of his severed case to state court. *See id.* at 9 ("Given the peculiarities of the removal/severance procedure that occurred in the *Adames* case, it is virtually certain that a valid basis for federal removal jurisdiction does *not* exist in some of the now severed cases. Only after some discovery has occurred, however, will the parties learn whether there is a factual, jurisdictional basis for the military contractor defense. Accordingly, the plaintiffs in any of these severed cases may renew their motion for remand, once the jurisdictional facts become clear.") (emphasis in original).

[14] *Id.* at 4.

[15] This provision of 28 U.S.C. § 1446(b) reads: "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

"defendants made inquiries and learned that welders at the Todd Shipyard do work on United States Navy ships," did defendants learn, for the first time, that there was any basis for federal jurisdiction.[16] "[B]efore that point in time, the defendants had no factual basis to believe there existed grounds for assertion of the military contractor defense."[17]

In other words, as soon as defendants received an "other paper" giving them a reasonable basis to believe there was a federal defense to *any one* of the Adames' plaintiffs' claims, the 30-day clock began to run. The *Adames* defendants filed their notice of removal within 30 days of learning they had a federal defense to plaintiff Moore's claims, so their removal of the entire *Adames* case was timely.

In this case, the defendants focus on plaintiff Mitchem – whose case was being prepared for trial – and assert that the first time they learned of any fact suggesting the availability of a federal defense to Mitchem's claims was on May 12, 2008. It was on this date that defendants received a transcript of Mitchem's deposition, where he testified that, during his employment as a welder at Newport News Shipbuilding, he helped build ships for the United States Navy. Before that time, defendants assert, they had no reason to suspect they could interpose the military contractor defense. Defendants insist that, because they filed their notice of removal on May 23, 2008 – within 30 days of receiving this "other paper from which it [could] first be ascertained that the case is one which is or has become removable"[18] – their notice was timely filed.

The defendants' argument, however, ignores the fact that the case removed from West

---

[16] Order (dkt. no. 1001) at 4.

[17] *Id.*

[18] 28 U.S.C. §1446(b).

7

Virginia included claims asserted not only by Mitchem but also by four other plaintiffs. One of these plaintiffs was William Thomas. Thomas points out that he provided his Fact Sheet to defendants on November 7, 2007 – over six months before defendants filed their notice of removal – and his Fact Sheet stated he welded on the USS Sandoval at the Norfolk Naval Yard while serving in the United States Navy. Thomas argues this was the first and critical "other paper" that gave defendants a factual basis to believe there existed grounds for assertion of the military contractor defense in the entire five-plaintiff case, and it was receipt of this "other paper" that started the running of the §1446(b) 30-day clock.

Defendants respond obliquely to Thomas's argument, stating only they "do not oppose severing and remanding the other claims in this case" – apparently hoping the Court will retain jurisdiction over Mitchem's claims and remand the claims made by the other four plaintiffs.[19] But the defendants removed the *entire* five-plaintiff case from West Virginia state court, just as they removed the *entire* 3,762-plaintiff *Adames* case from West Virginia state court; and the 30-day clock began to run in both cases as soon as defendants received an "other paper" giving them a reasonable basis to believe there was a federal defense to *any one* of the plaintiffs' claims.

The factual basis upon which defendants relied to remove the five-plaintiff case in this instance was receipt of a paper showing that one of the plaintiffs (Mitchem) welded on a United States Navy ship, implicating the military contractor defense. But defendants had received precisely the same thing – a paper showing that one of the plaintiffs (Thomas) welded on a United States Navy ship, implicating the military contractor defense – months earlier, and did not remove the five-plaintiff case. Having failed to file their notice of removal within 30 days of their *first* receipt of this

---

[19] Opposition brief (dkt. no. 27) at 12 n.3.

"other paper," defendants did not comply with the requirements of 28 U.S.C. §1446(b). Accordingly, the plaintiffs' motion for remand is well-taken.

### III. Additional Comments.

The Court has two additional comments. First, the five welders in this case originally joined together as parties-plaintiff in West Virginia state court. Following removal and transfer, this Court severed the plaintiffs so that each had his own case in the MDL. With this Order, the Court remands each of these five separate cases to the West Virginia state court where the first case was originally filed. As this Court stated in its Order addressing the motion to remand in the *Adames* case, "[w]hether any plaintiffs whom this Court remands to West Virginia state court may later re-join in state court is a matter for that court, not this one."[20]

---

[20] Order (dkt. no. 1001) at 8.

9

Second, in addition to asking for remand, the plaintiffs also ask for costs and fees, as allowed pursuant to 28 U.S.C. §1447(c).[21]  This statute "assigns the district court the discretion whether to award attorney fees and costs."[22]  Generally, so long as the defendant "had a legitimate basis for believing the case fell within the district court's . . . jurisdiction," costs and fees should be denied.[23]  Because the Court finds defendants had a colorable claim that removal was proper, the Court denies the motion for costs and fees.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: April 1, 2009

---

[21] "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. §1447(c).

[22] *Stallworth v. Greater Cleveland Regional Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997).

[23] *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 325 (10th Cir. 1994), *cert. denied*, 511 U.S. 1082 (1994).